**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**

| | |
|---|---|
| MESHWEIDA CARTER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE HILLSHIRE BRANDS COMPANY and TYSON FOODS, INC.<br><br>Defendants. | Civil Action No. 5:25-cv-05213-TLB<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Meshweida Carter ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her undersigned counsel, brings this class action complaint against Defendants The Hillshire Brands Company and Tyson Foods, Inc. (the "Defendants"). Plaintiff alleges the following upon information and belief based on the investigation of counsel, except as to those allegations that specifically pertain to Plaintiff, which are alleged upon personal knowledge.

## INTRODUCTION

1. This is a class action lawsuit against the Defendants regarding the manufacture, distribution, and sale of their State Fair Corn Dogs on a Stick, Jimmy Dean Pancakes and Sausage on a Stick and related products, as outlined in Exhibit A. (the "Affected Products").[1]

2. Tyson Foods manufactured the Affected Products in the United States, which were produced between March 17, 2025, through September 26, 2025.[2]

---

[1] *See Select Corn Dogs on a Stick and Pancakes & Sausage on a Stick Voluntarily Recalled,* TYSONFOODS (Sept. 27, 2025)(https://www.tysonfoods.com/news/news-releases/2025/9/select-corn-dogs-stick-and-pancakes-sausage-stick-voluntarily-recalled (last visited October 21, 2025).
[2] *Id.*

3. Tyson Foods manufactured and distributed the Affected Products that may contain small pieces of wooden stick embedded in the batter portion of the products, which poses a risk of injury if consumed.

4. According to the U.S. Department of Agriculture's Food Safety and Inspection Service (FSIS), the recall was announced after it was determined that the Affected Products manufactured by The Hillshire Brands Company a subsidiary of Tyson Foods, may be contaminated with extraneous materials. On September 27, 2025, FSIS announced that the Defendants were recalling approximately 58,000,000 pounds of corn dog and breakfast-on-a-stick products due to this potential contamination."[3]

5. This is a contamination defect, which Defendants have acknowledged through a product recall, posing an unintended risk of injury to consumers.[4] Consumers, including Plaintiff, would not have purchased the Affected Products, or at the very least paid less for the Affected Products, if she knew about the defect.

6. Plaintiff and other consumers had a reasonable expectation that the Affected Products would not pose a risk of injury, including the risk that small pieces of wooden material embedded in the batter could be ingested, causing an injury to the consumer. [5]

7. The presence of wood fragments in food products present a risk of injury to consumers if consumed.[6]

8. Tyson Foods did not disclose that the Affected Products could be contaminated with small pieces of wooden material embedded in the batter portion of the Affected Products.

---

[3] *Hillshire Brands Company Recalls Corn Dog and Sausage-on- stick Products Due to Possible Extraneous Material Contamination,* USDA (Sept. 27, 2025), *https://www.fsis.usda.gov/recalls-alerts/hillshire-brands-company-recalls-corn-dog-and-sausage-a-stick-products-due-possible* (last accessed Oct. 21, 2025).
[4] *Id.*
[5] *Id.*
[6] *Id.*

This omission concealed a material safety risk from the consumers, including Plaintiff, who reasonably expected that the products were safe for consumption.

9. Despite promoting that it is "proud of [its] growing portfolio of protein-centric brands, offering nutritious and delicious options that fit seamlessly into modern lives" and that it is "dedicated to making food that not only tastes good but also nourishes the future," Tyson Foods did not inform consumers of the contamination risk. Had consumers known of this risk, they would not have purchased the Affected Products or would have paid significantly less for them. *See Figure 1* below:




*Figure 1: Screenshot from Tyson Foods website highlighting its statements regarding its "nutritious and delicious options"*

10. Tyson Foods' packaging and labeling for the Affected Products provide preparation and storage instructions but contain no warnings or guidance regarding the potential contamination with small pieces of wooden material embedded in the batter, despite the risk of injury if consumed.




*Figure 2: Screenshot of Jimmy Dean Pancakes & Sausage on a Stick website highlighting the preparation and storage of the product*

11. The product packaging and advertising for the Tyson Foods omits any warning regarding the potential presence of extraneous materials, which could pose a risk of injury if consumed.

12. Those safety-related representations were misleading by omission, and the Affected Products, by Tyson Foods' own admission, posed a safety hazard. This omission leads a reasonable consumer to believe they are not purchasing a product that contains pieces of wood in their food, when in fact, they are purchasing a product that could have wood in their food.

13. Tyson Foods' representations about safety omitted critical safety details.

14. On September 27, 2025, the U.S. Food Safety and Inspection ("FSIS") announced a recall of approximately 58,000,000 of the Affected Products. The recall identified a hazard that the Affected Products contained extraneous materials posing a risk of injury to consumers.[7]

15. As a proposed remedy, Tyson Foods advised consumers to discard the Affected Products or return them to the place of purchase for a refund. This remedy places responsibility entirely on consumers, requiring them to identify and remove potentially contaminated products. It provides no guidance for consumers who may have already consumed the products, no compensation for prior harm and only provides for a refund if the Affected Product has already been consumed.

16. The remedy requires consumers to identify and return or discard the Affected Products and does not give remedy to those who already consumed or discarded the Affected Product.

17. The remedy is insufficient as most consumers, including Plaintiff, no longer have the Affected Product in their possession.

18. Tyson Foods in its own advertising and promotional materials emphasized protein-centric brands, offering nutritious and delicious options that fit seamlessly into modern lives and

---

[7] *Select Corn Dogs on a Stick and Pancakes & Sausage on a Stick Voluntarily Recalled*, TYSONFOODS (last visited October 21, 2025).

that it is "dedicated to making food that not only tastes good but also nourishes the future."[8] This endorsement reinforces trust and safety while failing to disclose the potential presence of extraneous materials — a material hazard now acknowledged by the recall.

19. Accordingly, Plaintiff brings this action individually and on behalf of a Class of similarly situated individuals for equitable relief and to recover damages and restitution for: (i) violations of California's Consumer Legal Remedies Act (CLRA), Cal. Bus. & Prof. Code §§ 1750, et seq., (ii) violations of California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code §§ 17200, et seq., (iii) unjust enrichment, and (iv) breach of implied warranty of merchantability.

## PARTIES

20. Plaintiff Meshweida Carter is a citizen of Adelanto, California and purchased an Affected Product, Jimmy Dean Blueberry Pancakes & Sausage on a Stick product from Walmart in California on March 29, 2025. The product may have contained wooden pieces in the batter that were present during ordinary use. Ms. Carter purchased the product for household consumption purposes and everyday use, including for minors. She has encountered potential safety hazards from the product and does not believe that the remedies offered during the recall are sufficient to ensure safety or to compensate her. She is concerned that the Affected Product could have posed a risk of injury to herself, her children, or other consumers. She would not have purchased the Affected Product had she known about the wood in the batter.

21. Plaintiff is still interested in purchasing Defendants' products if they are rendered safe and the company implements adequate changes.

22. Defendant Tyson Foods, Inc., is a Delaware corporation and maintains its principal

[8] TYSON FOODS, https://www.tysonfoods.com (last visited Oct 21, 2025).

office in Springdale, Arkansas. Tyson Foods is a major manufacturer and seller of meat and prepared food products. Tyson Foods markets and sells the Affected Products nationwide, including through retailers from which Plaintiff and the Class purchased them.

23. Defendant, The Hillshire Brands Company is a Maryland corporation and maintains its principal place of business in Springdale, AR. Hillshire operates multiple processing and manufacturing facilities across the United States producing meat products like corn dogs, sausages, breakfast meats, hot dogs, deli meat, etc.

24. Defendants manufacture, sell, market, and distribute the Affected Products across the United States. Defendants act jointly in their sale, manufacturing, and marketing of the Affected Products.

## JURISDICTION AND VENUE

25. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class members; the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs; and at least one Class member is a citizen of a state different from the Defendants.

26. This Court has personal jurisdiction over Defendants because Defendants both have their principal place of businesses within this district. Defendants thereby established sufficient minimum contact by directing their commercial activities into the state and engaging in transactions that form the basis of Plaintiff's claim. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants reside in this District.

## FACTUAL ALLEGATIONS

### I. Defendant Manufactured, Distributed, Marketed, and Sold the Affected Products

27. Defendants manufactured, distributed, marketed, and sold the Affected Products.

The Affected Products were specifically marketed and implied as safe, yet they contained extraneous wooden pieces which posed a risk of injury.

28. Defendant Tyson Foods' own product page makes affirmative claims of delivering high quality food products to consumers, while using "the latest technology and methods to test and safeguard our food." [9] Nowhere does the product page or online materials disclose the risk of the presence of extraneous wooden pieces in the Affected Products that could be consumed by consumers, creating a potential risk of injury.

29. Tyson states on its website that

> "Our Food Safety and Quality Assurance Team is passionate about making great food safe. Safe food requires a culture that puts safety first. This means responsibility for food safety lies with everyone from the plant floor to the CEO's office. That is why we created the Sentinel Site Program, a rigorous method for testing for post-processing contamination to ensure safe, responsible food for our consumers. In addition, our plants, processes, and meats are routinely checked for quality and safety, both internally and through third party audits."[10]

30. But for Tyson Foods' misrepresentation and omission, Plaintiff would not have purchased the product, would have paid less for it, and/or would have bought a safer alternative.

31. Tyson Foods' misrepresentations caused Plaintiff to spend money that she otherwise would not have spent.

32. Defendant Tyson Foods advertised and marketed its products as safe and high quality, and using the latest technology and methods to safeguard the food.[11]

---

[9] *Food Quality Leader*, TYSON FOODS, https://www.tysonfoods.com/innovation/food-innovation/food-quality-leader (last visited Oct. 21, 2025).
[10] *Id.*
[11] *Id.*




*Figure 3- Screenshot from Tyson Foods's website highlighting the safety claims*

## II. <u>Defendants' Manufacturing Poses a Choking Risk In The Affected Products</u>

33. Defendants' Affected Products pose a risk of injury, as they may contain extraneous wooden pieces that could be ingested by consumers, creating a risk of injury.

34. As shown in *Figure 4*, below is the recalled product, Jimmy Dean Blueberry Pancakes & Sausage on a Stick, 30 oz, 12 Count (Frozen) ordered by the Plaintiff.




*Figure 4: Screenshot of the Plaintiff's purchase history showing the order of the recalled product, Jimmy Dean Blueberry Pancakes & Sausage on a Stick, 30 oz, 12 Count (Frozen)*

35. The Affected Products were manufactured and distributed in a manner that allowed for the potential presence of extraneous wooden fragments. Despite this hazard, the product packaging, labeling, and online materials did not include any warnings regarding the presence of such materials or the potential for injury to consumers.

36. Feasible, safer alternatives were available at reasonable cost at all relevant times, including, but not limited to: (a) enhanced production controls to prevent extraneous wooden fragments from entering the products; (b) alternative processing methods or equipment to ensure fragments cannot contaminate the batter; and (c) clear warning labels on the product packaging and online materials alerting consumers to the risk of foreign materials.

## III. Defendants' False and Misleading Advertising Campaign to Promote Safety and Induce Consumers to Purchase the Affected Products

37. Tyson Foods and its retail partners promoted the Affected Products through advertising and product descriptions that emphasized quality and safety. Promotional materials highlighted attributes such as, "From the farm to the plant to the loading dock and beyond, the Food Safety & Laboratory Services Network performs multiple tests on our products and our manufacturing environments to protect potential food quality or safety issues"[12] These materials conveyed a message of reliability, safety, and convenience to consumers, while omitting any reference to the risk of extraneous wooden fragments that later prompted the FSIS recall.

38. When it sold the Affected Products, Tyson Foods' consumer-facing marketing was materially misleading and induced consumers to purchase and use the product under a false sense of safety and advertised its commitment to safety. By touting the quality and safety, attributes of its products while concealing the known risk of extraneous wooden fragments, later confirmed in the FSIS recall, Tyson Foods engaged in deceptive and misleading advertising practices.

39. Nowhere does Tyson Foods, on the product page or the packaging, disclose the material risk of the presence of wooden pieces in the batter portion, creating a foreseeable injury hazard.

40. These standards require food manufacturers to implement production and quality controls that minimize contamination and safety hazards during ordinary use and consumption.

41. Defendants positioned themselves in the marketplace as trusted and safety-conscious manufacturers of food products, emphasizing quality, care, and reliability. This focus on quality and safety was a key marketing strategy, building consumer trust and enabling the company to sell their Affected Products across major retail stores.

---

[12] *See Food Quality Leader*, TYSONFOODS (last visited Oct. 21, 2025).

42. Consumers reasonably relied on Tyson Foods's representations that its products incorporated robust safety features and met rigorous safety standards. Tyson Foods's marketing, including advertisement segments highlighting and emphasizing quality and care, reinforced the perception that the Affected Products were carefully produced, tested, and safe for consumption.

43. As a result, consumers — including Plaintiff — bought the Affected Products based on Tyson Foods's representations of safety and convenience. Tyson Foods's conduct influenced consumer decision-making by creating the false impression that its products were meaningfully safer, when in fact the Affected Products posed a risk of injury to the user, as confirmed by the nationwide recall implemented due to severe contamination risks.

## IV. Consumers Have Been Harmed By Defendants' False and Misleading Representations

44. Defendants knew, or should have known, that the advertising and labeling claims made regarding the Affected Products were false and misleading. Tyson Foods publicly represents that its food products are checked by the "Food Safety and Quality Assurance Team" who "is passionate about making great food safe. Safe food requires a culture that puts safety first. This means responsibility for food safety lies with everyone from the plant floor to the CEO's office."[13]

45. Defendants created the Sentinel Site Program, which is a "rigorous method for testing for post-processing contamination to ensure safe, responsible food for our consumers."[14]

46. Defendants claim that "our plants, processes, and meats are routinely checked for quality and safety, both internally and through third party audits."[15]

47. These representations convey to consumers that the products are carefully produced, safe, and suitable for children and families, creating a perception of reliability and

---

[13] *Id.*
[14] *Id.*
[15] *Id.*

quality that was misleading given the undisclosed risk of extraneous wooden fragments.[16]

48. Defendants knew, or should have known, that their products may not actually be safe given the earlier product recalls they have issued in the past prior to the one that occurred in January of 2014,[17] September of 2016,[18] June of 2017,[19] and June of 2018,[20] May of 2019,[21] July of 2021,[22] and November of 2023.[23]

49. Defendants knew, or should have known, that the advertising for the Affected Products misrepresented material facts concerning safety.

50. Defendants knew, or should have known, that the representations and statements made through their labeling and advertising would mislead consumers to purchase the Affected Products instead of competitors' cheaper products based on a false belief that the Affected Products were safer.

51. Had Defendants disclosed the true risks of the Affected Products, Plaintiff would not have purchased the Affected Products, or would have paid less for it, had the Affected Products been truthfully and accurately labeled.

---

[16] *Id.*

[17] *2014 Salmonella Heidelberg Infections Linked to Tyson Brand Mechanically Separated Chicken at a Correctional Facility, (Final Update)* CDC (Feb. 24, 2014) https://archive.cdc.gov/www_cdc_gov/salmonella/heidelberg-01-14/index.html? (last visited Oct. 21, 2025).

[18] *Tyson Foods Voluntarily Recalls 5lb. Bags of Chicken Nuggets Sold at Costco Stores,* TYSON FOODS (Sept. 27, 2016) https://www.tysonfoods.com/news/news-releases/2016/9/tyson-foods-voluntarily-recalls-5-lb-bags-chicken-nuggets-sold-costco? (last visited Oct. 21, 2025).

[19] Mark Osborne, *Tyson Recalls Over 3,000 Pounds of Frozen Chicken Due to Plastic Contamination*, ABCNEWS (June 9, 2018) https://abcnews.go.com/Business/tyson-recalls-3000-pounds-frozen-chicken-due-plastic/story?id=55767669& (last visited Oct. 21, 2025).

[20] *Id.*

[21] *Tyson Foods Voluntarily Expands Recall of Ready-to-Eat Chicken Breast Strips,* TYSONFOODS (May 4, 2019) https://www.tysonfoods.com/news/news-releases/2019/5/tyson-foods-voluntarily-expands-recall-ready-eat-chicken-breast-strips(last visited Oct. 21, 2025).

[22] *2021 Outbreak of Listeria Infections Linked to Pre-cooked Chicken – Investigation Updates*, CDC (Sept. 10, 2021) https://archive.cdc.gov/www_cdc_gov/listeria/outbreaks/precooked-chicken-07-21/details.html (last visited Oct. 21, 2025).

[23] *Limited Amounts of Tyson® Brand Frozen, Fully Cooked Chicken "Fun Nuggets" Voluntarily Recalled* TYSONFOODS (Nov. 4, 2023) https://www.tysonfoods.com/news/news-releases/2023/11/limited-amounts-tysonr-brand-frozen-fully-cooked-chicken-fun-nuggets (last visited Oct. 21, 2025).

## V. The Affected Products Have Been the Subject of a Recall

52. On September 27, 2025, Tyson Foods announced a recall of approximately 58,000,000 Affected Products.[24] The U.S. Department of Agriculture's Food Safety and Inspection Service concluded that the Affected Products posed a significant risk of injury.

53. Tyson Foods has advised its consumers either "to contact a healthcare provider in case of any injury or "should be thrown away or returned to the place of purchase."[25]

54. The recall directed consumers to contact a healthcare provider in case of any injury caused or throw away the product or return to the place of purchase. This statement confirms the Affected Products are not safe for consumption.

55. The recall does not offer sufficient reimbursement for the prices consumers paid in reliance on Tyson Foods' misrepresentations as certain consumers may have disposed of the Affected Products given that it posed an injury. Additionally, the recall does not give consumers the option to obtain a cash refund, instead only offering returns to the place of purchase or discarding it. Further, the remedy may not fully address the risk posed by extraneous wooden pieces or associated potential injury nor prevent Defendants from implementing safeguards in the future.

## TOLLING

56. The statutes of limitations applicable to Plaintiff's and the Classes' claims were tolled by Defendants' conduct and Plaintiff's and Class Members' delayed discovery of their claims.

57. As alleged above, Plaintiff and members of the Classes did not know, and could

[24] *Hillshire Brands Company Recalls Corn Dog and Sausage-on- stick Products Due to Possible Extraneous Material Contamination*, USDA (Sept. 27, 2025), (last accessed Oct. 21, 2025).
[25] *Id.*

not have known, that the Affected Products were dangerous. Plaintiff and members of the Classes could not have discovered Defendants' unlawful conduct with reasonable diligence.

**CLASS ACTION ALLEGATIONS**

58. Plaintiff brings this action pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, individually and on behalf of the following Classes:

> All persons who purchased one or more of Defendants' Affected Products in the United States for personal use within any applicable limitations period (the "Nationwide Class").

59. Plaintiff brings this action individually and on behalf of the following California Subclass:

> All persons who purchased one or more of Defendants' Affected Products in the state of California for personal use within any applicable limitations (the "California Subclass").

60. Excluded from the Class and Subclass are: (1) any Judge or Magistrate presiding over this action and any members of their families; and (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, any entities in which Defendants or their parents and any entities in which Defendants have a controlling interest and their current or former employees, officers, and directors.

61. Numerosity (Rule 23(a)(1)): The exact number of members of the Class is unknown and currently unavailable to Plaintiff, but joinder of individual members herein is impractical. The Class is likely comprised of thousands, if not millions, of consumers. The precise number of Class members, and their addresses, is unknown to Plaintiff at this time, but can be ascertained from Defendants' records and/or retailer records. The members of the Class may be notified of the pendency of this action by mail or email, Internet postings and/or publications, and supplemented (if deemed necessary or appropriate by the Court) by published notice.

62. Predominant Common Questions (Rule 23(a)(2) and (b)(3)): The Class's claims present common questions of law and fact, and those questions predominate over any questions

that may affect individual Class members. The common and legal questions include, but are not limited to, the following:

a. Whether the Affected Products share a common contamination defect that permits a risk of injury;

b. Whether Defendants knew or should have known of the defect and when

c. Whether Defendants' marketing omitted material defects/hazards;

d. Whether the recall demonstrates a proper remedy;

e. Whether the marketing, advertising, packing, and labeling for the Affected Products were false, misleading, and/or deceptive;

f. Whether Defendants violated the state consumer protection statutes alleged herein;

g. Whether Defendants were unjustly enriched; and

h. The nature of relief, including damages and equitable relief, to which Plaintiff and members of the Class are entitled.

63. Typicality of Claims (Rule 23(a)(3)): Plaintiff's claims are typical of the claims of the Class because Plaintiff's, like all other Class Members, purchased one of the Affected Products, suffered damages as a result of that purchase, and seek the same relief as the proposed Class Members.

64. Adequacy of Representation (Rule 23(a)(4)): Plaintiff adequately represents the Class because her interests do not conflict with the interests of the members of the Class, and she has retained counsel competent and experienced in complex class action and consumer litigation. Plaintiff and her counsel will fairly and adequately protect the interests of the members of the Class.

65. Superiority (Rule 23(b)(3)): A class action is superior to other available means of adjudication for this controversy. It would be impracticable for members of the Class to individually litigate their own claims against Defendants because the damages suffered by Plaintiff and the members of the Class are relatively small compared to the cost of individually litigating their claims. Individual litigation would create the potential for inconsistent judgments and delay and expenses to the court system. A class action provides an efficient means for adjudication with fewer management difficulties and comprehensive supervision by a single court.

66. Declaratory Relief (Fed. R. Civ. P. 23(b)(1) and (2)): In the alternative, this action may properly be maintained as a class action because the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members, which would establish incompatible standards of conduct for the Defendants; or the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of other members of the Class not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole.

## CAUSES OF ACTION

### COUNT
### VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW
### CAL. BUS. & PROF. CODE §§ 17500, *ET SEQ.*
### (On behalf of Plaintiff and the California Subclass)

67. Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

68. Defendants' conduct as alleged herein violates California's False Advertising Law

("FAL"), Cal. Bus. & Prof. Code §§ 17500, et seq., which makes it unlawful for a business to make, disseminate, or cause to be made or disseminated to the public "any statement, concerning … personal property … which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

69. The Affected Products at issue are "personal property" within the meaning of the FAL.

70. The Affected Product's packaging omitted any warnings or disclosures regarding the potential presence of foreign materials, contrary to reasonable consumer expectations.

71. Any express or implied representation, material omission of information, or failure to correct a past material misrepresentation or omission regarding the safety of the Affected Products is a "statement[] concerning personal property" within the meaning of the FAL.

72. Defendants violated the FAL by making, disseminating, and causing to be made or disseminated to the public statements about the safety of the Affected Products that were "untrue or misleading" within the meaning of the FAL.

73. Defendants failed to disclose accurate information regarding the Affected Products generally. Defendants made, disseminated, or caused to be made or disseminated untrue or misleading public statements about Affected Products in numerous forums, including but not limited to Defendants' websites. Defendants falsely stated that there were robust, effective controls and testing to prevent post-processing contamination and that the Affected Products were safe for consumption, when in fact they omitted the known risk of extraneous wooden fragments later confirmed by the FSIS recall.

74. Defendants knew, or by the exercise of reasonable care, should have known that

each of those statements was untrue, misleading, and likely to deceive the public at or near the time it was made or disseminated, and at all times thereafter.

75. Defendants themselves admitted that their own marketing did not accurately reflect the details of the Affected Products and that their advertising communicated falsehoods including that consumers would be safe.

76. As a result of Defendants' FAL violations and the harm caused thereby, Plaintiff and Class members are entitled to and seek (a) injunctive relief to protect the consuming public by prohibiting Defendants from engaging in their past and ongoing acts, omissions, and conduct that violate the FAL; (b) restitution of the full value of all monies and other consideration that Plaintiff and Class members paid Defendants for the purchase or lease of the Affected Products, including any reduced value of Plaintiff's and Class members' food, and disgorgement of the profits Defendants derived from their wrongful conduct; and (c) an award of reasonable attorneys' fees under Cal. Code Civ. Proc. § 1021.5.

**COUNT II**
**VIOLATION OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT**
**CAL. BUS. & PROF. CODE §§ 1750, *ET SEQ*.**
**(On behalf of Plaintiff and the California Subclass)**

77. California's Consumer Legal Remedies Act ("CLRA") prohibits "unfair methods of competition and unfair or deceptive acts or practices" in connection with the sale or lease of goods. Cal. Civ. Code § 1770.

78. The CLRA is to be liberally construed and applied to protect consumers against unfair and deceptive business practices. Cal. Civ. Code § 1760.

79. Plaintiff and each California Subclass member is a "consumer," as defined in Cal. Civ. Code § 1761(d).

80. The Affected Products are "goods," as defined in Cal. Civ. Code § 1761(a).

81. Defendants are both a "person" as defined in Cal. Civ. Code § 1761(c).

82. Plaintiff and each proposed Subclass member's purchase of Defendants' Affected Products constituted a "transaction" as defined in Cal. Civ. Code § 1761(e).

83. Defendants' actions were unfair, unlawful, and deceptive under the CLRA. Defendants made false representations about the Affected Products, Defendants falsely represented that the Affected Products met specific safety standards while the Affected Products did not meet these standards and did not contain advertised safety. Cal. Civ. Code § 1770(a)(7).

84. Defendants' actions were unfair, unlawful, and deceptive under the CLRA as Defendants fraudulently advertised their Affected Products and fraudulently advertised that the Affected Products would contain certain qualities, but sold consumers Affected Products that were different than what was advertised. Cal. Civ. Code § 1770(a)(9).

85. Defendants' actions were unfair, unlawful, and deceptive under the CLRA as Defendants promised that Plaintiffs and the California Subclass Members that the Affected Products were safe. Cal. Civ. Code § 1770(a)(7).

86. Defendants' actions were unfair, unlawful, and deceptive under the CLRA as Defendants inserted untrue statements about safety on their website. Cal. Civ. Code § 1770(a)(14).

87. Defendants' fraudulently deceived Plaintiff and the California Subclass by representing that their Affected Products and services have certain characteristics, benefits, and qualities, which they do not have. In doing so, Defendants intentionally misrepresented and concealed material facts from Plaintiff and the California Subclass. Defendants falsely advertised their Affected Products had higher quality standards than those that were ultimately delivered. These misrepresentations and concealments were committed with the intention of deceiving Plaintiff and the California Subclass and depriving them of their legal rights and money.

88. Defendants' claims about their products and led and continues to lead consumers to reasonably believe that Defendants' Affected Products were safe.

89. Plaintiff and the California Subclass have suffered injury-in-fact as a result of and in reliance upon Defendants' false representations and have lost money as a result of Defendants' unfair, unlawful, and fraudulent conduct. Plaintiff and the California Subclass would not have bought Defendants' Affected Products, or would have paid significantly less for them, had they known that they would receive a meat product with wood in it.

90. Defendants' actions as described herein were done with conscious disregard for Plaintiff and the rights of California Subclass Members, and Defendants intentionally represented that the Affected Products or services have approval, characteristics, ingredients, uses, benefits, or quantities which they do not have.

91. Plaintiff and California Subclass Members seek all monetary and nonmonetary relief allowed by law including restitution, reasonable attorneys' fees and costs under California Code of Civil Procedures § 1021.5, and injunctive relief under the CLRA pursuant to Cal. Civ. Code § 1782(d) and other appropriate equitable relief.

## COUNT III
## UNJUST ENRICHMENT
## (On behalf of the Plaintiff and the Class)

92. Plaintiff hereby incorporates all other paragraphs of this Complaint and restates them as if fully set forth herein.

93. Plaintiff and Class members conferred benefits upon Defendants. Plaintiff and Class members paid money for Defendants' Affected Products that they would not have purchased or would not have purchased on the same terms, had they known that the Affected Products were unsafe.

94. Defendants unjustly retained the benefits conferred upon by Plaintiff and Class members.

95. Defendants retained those benefits under circumstances that make it inequitable for Defendants to retain such benefits. Specifically, Defendants retained those benefits even though Defendants' Affected Products were unsafe and could not perform as advertised. If Plaintiff and Class members had known the true nature of Defendants' Affected Products, they would not have purchased the products. Plaintiff and Class members are therefore entitled to disgorgement and/or restitution as prayed for hereunder.

96. Because Defendants' retention of the non-gratuitous benefits conferred on it by Plaintiff and members of the Class is unjust and inequitable, Defendants must pay restitution to Plaintiff and members of the Class for their unjust enrichment, as ordered by the Court.

## COUNT IV
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## (On behalf of the Plaintiff and the Class)

97. Plaintiff hereby incorporates all other paragraphs of this Complaint and restates them as if fully set forth herein.

98. Defendants are a merchant that designed, manufactured, marketed, and sold the Affected Products for ordinary household and everyday use.

99. Defendants specifically deal in the prepared foods market, including through their manufacturing, distribution, and sale of the Affected Products.

100. An implied warranty arose that the Affected Products were fit for their ordinary purposes, including safe consumption, including by children, and ensuring that the products were free from extraneous materials that could pose a choking or injury hazard.

101. The Affected Products were not merchantable at the time of sale because the batter portion contained wooden pieces in it.

102. The defect existed at the time of sale and was not discoverable upon reasonable inspection of Plaintiff or class members.

103. Defendants knew or should have known of this hazard through pre-market testing and post-sale complaints and reviews, yet continued sales without an adequate design fix or effective warnings.

104. Plaintiff and Class members purchased the Affected Products from Defendants or their authorized retailers. To the extent privity is required, it is satisfied by purchases through Defendants' retail channels and/or because purchasers were intended third-party beneficiaries of Defendants' warranties.

105. Any purported warranty disclaimer or limitation is unenforceable because it was not conspicuous, is unconscionable given the undisclosed safety defect, and in all events any limited remedy failed of its essential purpose.

106. Defendants had actual notice from consumer complaints and injury reports, as well as a letter sent by Plaintiff.

107. Defendants' breach was a proximate cause of injuries and damages, including choking, pain and suffering, and medical expenses, and overpayment, out-of-pocket and replacement costs, and diminution in value.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and the proposed Classes, pray for relief and judgment against Defendants as follows:

a. Certifying the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as the representative of the Class, and designating Plaintiff's counsel as Class Counsel;

b. Awarding Plaintiff and the Classes compensatory damages;

c. An order requiring Defendants to implement a court-supervised refund and corrective-notice program for all Affected Products;

d. Corrective advertising and disclosure statements at points of sale and on Defendants' website;

e. Disgorgement and restitution of monies received from Class Members as a result of the defective and misrepresented products;

f. Awarding Plaintiff and the Classes appropriate relief, including but not limited to actual damages;

g. For declaratory and equitable relief, including restitution and disgorgement;

h. For an order enjoining Defendants from continuing to engage in the wrongful acts and practices alleged herein;

i. Awarding Plaintiff and the Classes the costs of prosecuting this action, including expert witness fees;

j. Awarding Plaintiff and the Classes reasonable attorneys' fees and costs as allowable by law;

k. Granting preliminary and permanent injunctive relief against Defendants, directing Defendants to cure inadequate recall and notification processes, correct their manufacturing and marketing practices and to comply with the relevant consumer protection statutes;

l. Awarding pre-judgment and post-judgment interest;

m. For punitive damages; and

n. Granting any other relief as this Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury of all claims so triable.

Dated: October 21, 2025

By: *Courtney Ross Brown*

Courtney Ross Brown (2021156)
Samuel R. Jackson (2013247)
Cole Lorigan (2016192)
Randall K. Pulliam (98105)
Carney Bates & Pulliam, PLLC
1 Allied Dr., Suite 1400
Telephone: 501-312-8500
Facsimile: 501-312-8505
Email: cbrown@cbplaw.com
Email: sjackson@cbplaw.com
Email: clorigan@cbplaw.com
Email: rpulliam@cbplaw.com

Mark S. Reich (*pro hac vice* forthcoming)
Michael N. Pollack (*pro hac vice* forthcoming)
Levi & Korsinsky, LLP
33 Whitehall Street, 27th Floor
New York, NY 10004
Telephone: 212-363-7500
Facsimile: 212-363-7171
Email: mreich@zlk.com
Email: mpollack@zlk.com

*Counsel for Plaintiff*